

FILED

APR 1 3 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON THE WEBSITE

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re: | Case No. 06-22225-D-7 |
|  | Docket Control No. BWL-6 |
| BETSEY WARREN LEBBOS, |  |
|  | DATE:  April 5, 2007 |
|  | TIME:  10:00 a.m. |
| Debtor. | DEPT:  D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM DECISION

Betsey Warren Lebbos ("the Debtor"), who initiated the above-captioned chapter 7 bankruptcy case (the "Case"), seeks to disqualify the undersigned as the bankruptcy judge in this case. For the reasons set forth below, the court will deny the Debtor's request.

### I. INTRODUCTION

On June 26, 2006, the Debtor filed her voluntary chapter 7 petition. At that time, the Debtor was represented by attorney Darryll Alvey ("Mr. Alvey").[1]

A.  The Prior Motion

About four months after the Case was commenced, the Debtor transmitted to the court a letter dated October 30, 2006, addressed to the Honorable Michael McManus and the judges of this court (hereinafter "the Letter").  The Letter was filed in the

---

1.  Mr. Alvey has since been authorized to withdraw as the Debtor's counsel.

1  Case on November 1, 2006, and on November 9, 2006, the court
2  entered an order construing the Letter as a motion to terminate
3  the appointment of the chapter 7 trustee to whom the case was and
4  is assigned, Linda Schuette ("the Trustee"), to terminate the
5  appointment of Michael Dacquisto ("Trustee's Counsel") as the
6  Trustee's attorney, and for disciplinary relief against the
7  Trustee and Trustee's Counsel.[2]

8      The Debtor, the Trustee, and the United States Trustee's
9  office filed documents in support of their respective positions
10  concerning the Prior Motion.  The court heard oral argument on
11  the Prior Motion on January 3, 2007, and on January 22, 2007,
12  issued its Memorandum Decision (hereinafter "the Decision") and
13  order denying the Prior Motion.

14  B.  The Present Motion

15      On February 28, 2007, the Debtor filed an Affidavit and
16  Points and Authorities in Support of Disqualification of
17  Honorable Robert Bardwil ("the Affidavit"); on March 14, 2007, a
18  Supplemental Affidavit and Points and Authorities in Support of
19  Disqualification of Honorable Robert Bardwil; and on March 16,
20  2007, page 3 of the supplemental affidavit, which had been
21  inadvertently omitted from the March 14 filing.[3]  The Debtor did
22  not file a motion to disqualify the undersigned or otherwise seek
23  to set the matter for hearing.

24  / / /

25

26      2.  Hereinafter, the Debtor's request for this described relief
27  will be referred to as "the Prior Motion."

28      3.  Hereinafter, the March 14 and March 16 filings will be
referred to collectively as "the Supplemental Affidavit."

The matter came to the attention of the court on or about March 21, 2007, when the Debtor filed a letter with the Clerk of the Court referencing the Affidavit.  On March 22, 2007, the court entered an order construing the Affidavit as a motion to disqualify the undersigned.  The order gave the Trustee, the United States Trustee, and other parties in interest until March 30, 2007, in which to file and serve opposition or responses to the Debtor's request for disqualification.

On March 21, 2007, the Debtor filed an Ex Parte Request to Void Decisions Due to Pending Disqualification and Supplement to It (hereinafter "Request to Void Decisions").[4]  On March 30, 2007, the Debtor filed a Second Supplemental Affidavit in Support of Disqualification of Honorable Robert Bardwil.  On March 29, 2007, the Trustee filed a response to the Affidavit.  On April 4, 2007, the Debtor filed a Third Supplemental Affidavit in Support of Disqualification of Honorable Robert Bardwil and Reply to Opposition.[5]

On April 5, 2007, the court heard oral argument.  The following parties appeared and presented argument:  John Read (by telephone), making a special appearance for the Debtor, and Michael Dacquisto (by telephone), for the Trustee.  The Debtor also entered her appearance by telephone.

/ / /

---

4.  This request is referred to in this decision insofar as it supplements the Affidavit.  The court has not yet ruled on the request itself, which is set for hearing on April 25, 2007.

5.  Hereinafter, the Affidavit, the Supplemental Affidavit, the Second Supplemental Affidavit, and the Third Supplemental Affidavit will be referred to collectively as "the Motion."

1  No objection was made to any evidence offered.  The Motion

2  having been briefed and argued by those parties wishing to be

3  heard, the court took the Motion under submission.[6]

4  II. ANALYSIS

5  A.  Request for Determination by Another Judge

6  As a preliminary matter, the Debtor asks that her request to

7  disqualify the undersigned be determined by a judge other than

8  the undersigned.  Therefore, before the Motion can be resolved on

9  the merits, the court must determine whether the disqualification

10  issue can and should be decided by another judge.

11  Determination of the Motion is governed by 28 U.S.C. § 455

12  (see discussion, below).  The Ninth Circuit appears to require

13  that a motion for disqualification under that section be decided

14  by the judge whose disqualification is sought.  Bernard v. Coyne

15  (In re Bernard), 31 F.3d 842, 843 (9th Cir. 1994); United States

16  v. Sibla, 624 F.2d 864, 868 (9th Cir. 1980).  Section 455 does

17  not "contain a mechanism for referring disqualification motions

18  to someone else."  In re Bernard, 31 F.3d at 843.  Nor do the

19  Federal Rules of Bankruptcy Procedure or the local rules of this

20  court provide such a procedure.[7]  Therefore, the request to have

21  

22  6.  Pursuant to the remarks of Mr. Read at the hearing, the
court considers the Debtor's request for disqualification to be
23  applicable to her parent bankruptcy case and to the two adversary
proceedings pending in it, Adv. Nos. 06-2314 and 07-2006.

24  7.  The court notes that 28 U.S.C. § 144 provides for
25  disqualification proceedings to be assigned to a judge other than the
challenged judge.  However, that section does not apply to
26  bankruptcy judges.  Seidel v. Durkin (In re Goodwin), 194 B.R. 214,
221 (B.A.P. 9th Cir. 1996).  The court is unable to locate a Rule 224
27  in the local rules of the U.S. District Court for the Central
District of California, which is referred to by the Debtor, but notes
28  that the Debtor cites that rule as applicable to federal district
court judges, not to bankruptcy judges.

- 4 -

the Motion determined by a judge other than the undersigned is denied.

B.   Legal Standards for Disqualification

This court has jurisdiction over the Motion pursuant to 28 U.S.C. sections 1334 and 157(b)(1).  The Motion is a core proceeding under 28 U.S.C. section (b)(2)(A) & (O); In re Betts, 143 B.R. 1016, 1018 (Bankr. N.D. Ill. 1992).

"A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstance arises, or, if appropriate, shall be disqualified from presiding over the case." Fed. R. Bankr. P. 5004(a).

Section 455 of Title 28 provides in part as follows:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

* * *

(4) He knows that he . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

The disqualification statute was comprehensively revised in 1974, to provide for disqualification not only where a judge holds a personal bias or prejudice, but also to spell out a list (not fully reproduced above) of various interests and

relationships that require the judge to disqualify himself from
hearing a proceeding; such interests and relationships were only
generally stated in the prior statutory language.  Liteky v.
United States, 510 U.S. 540, 546-48 (1994).  Section 455(a) was
added to include objective, "catch-all" grounds for
disqualification, in addition to the earlier "interest or
relationship" grounds and "bias or prejudice" grounds, which are
now specifically stated and set forth in the various subsections
making up § 455(b).  Liteky, 510 U.S. at 548.  Under § 455(a),
"[the standard for recusal is clearly objective: 'whether a
reasonable person with knowledge of all of the facts would
conclude that the judge's impartiality might reasonably be
questioned'."  In re Georgetown Park Apts., Ltd., 143 B.R. 557,
559 (B.A.P. 9th Cir. 1992), quoting United States v. Nelson, 718
F.2d 315, 321 (9th Cir. 1983) (other citations omitted).

The Code of Conduct for United States Judges (the "Code of
Conduct") mirrors the provisions of 28 U.S.C. § 455.  The Code of
Conduct requires that "every judicial officer must satisfy
himself that he is actually unbiased towards the parties in each
case and that his impartiality is not reasonably subject to
question."  Bernard, 31 F.3d at 843.  Under this standard, the
judge must not only be subjectively confident that he is
unbiased; it is also objectively necessary that "an informed,
rational, objective observer would not doubt his impartiality."
Id. at 844, citing United States v. Winston, 613 F.2d 221, 222
(9th Cir. 1980).  However, "to say that § 455(a) requires concern
for appearances is not to say that it requires concern for
mirages."  United States v. El-Gabrowny, 844 F. Supp. 955, 961

- 6 -

(S.D.N.Y. 1994).  As such, recusal must be based on factors in the record and in the law.  _Id_. at 962.

Cases applying recusal statutes apply a presumption of impartiality.  _E.g._ _In re Larson_, 43 F.3d 410, 414 (8th Cir. 1994) (judge presumed impartial; parties seeking recusal bear "substantial burden" of proving otherwise); _First Interstate Bank v. Murphy, Weir & Butler_, 210 F.3d 983, 987 (9th Cir. 2000) ("Judicial impartiality is presumed"); _In re Spirtos_, 298 B.R. 425, 431 (Bankr. C.D. Cal. 2003) ("A judge is presumed to be qualified to hear a matter and the burden is upon the moving party to prove otherwise").

In addition, "[j]udges have an obligation to litigants and their colleagues not to remove themselves needlessly . . . because a change of umpire in mid-contest may require a great deal of work to be redone . . . and facilitate judge-shopping." _In re Betts_, 143 B.R. 1016, 1020 (Bankr. N.D. Ill. 1992), quoting _In re National Union Fire Ins. Co._, 839 F.2d 1226, 1229 (7th Cir. 1988) (omitting citation); _see also_ _In re Computer Dynamics, Inc._, 253 B.R. 693, 698 (E.D. Va. 2000) (judge equally obligated not to remove himself when there is no necessity and to do so when there is), _aff'd_ 10 F. App'x 141 (4th Cir. 2001).

C.    The Debtor's Arguments

The Debtor offers several arguments designed to show that the undersigned has a personal bias or prejudice against her and in favor of the Trustee, Trustee's Counsel, and the United States Trustee, and further, that "[a] person aware of the facts would also entertain a reasonable doubt as to [the undersigned's] ability to be impartial."  Affidavit, at 1:17-21.

1    The Trustee responds that the Debtor should not benefit from

2 her failure to follow the proper procedures to set this matter

3 for hearing, that the Motion, coming as it does seven months into

4 the bankruptcy case, should be denied as untimely, and that the

5 grounds advanced by the Debtor amount to nothing more than

6 dissatisfaction with the court's orders.[8]

7                1.   Alleged Failure to Read Debtor's Pleadings

8    The Debtor's first ground for disqualification is that the

9 undersigned has issued rulings in this Case without reading the

10 Debtor's pleadings.  In the Affidavit, she cites several examples

11 of allegedly false statements in the Decision, and asserts that

12 the court drew heavily from inaccurate statements in the U. S.

13 Trustee's brief, while ignoring the Debtor's pleadings.

14    The Debtor begins by delineating the numerous times she

15 mentioned her probation and probation officers in her pleadings

16 comprising the Prior Motion, in her motion for change of venue,

17 and in her opposition to her attorney's motion to withdraw as her

18 counsel.  She complains that the undersigned, in the Decision,

19 falsely referred to her "parole agents," instead of to her

20 "probation officers," and concludes therefrom that the

21 undersigned failed to read the Debtor's pleadings, but instead

22 mirrored the U.S. Trustee's pleadings.  The Debtor asserts that

23 the undersigned knew the Debtor was not on parole and had no

24

25
_____

26       8.   Because the Motion comes shortly after the issuance of the
     Decision which forms the basis for the Motion, the court concludes
27   that the Motion is timely.  See First Interstate Bank v. Murphy, Weir
     & Butler, supra, 210 F.3d at 988 n.8 [recusal issues must be raised
28   at the earliest possible time after facts supporting recusal request
     are discovered].

1  parole agents, that the undersigned "had his claims published so
2  as to cause [the Debtor] actual harm while knowing that he [was]
3  defrauding the public with his false claims," and that "he did so
4  out of a personal bias and prejudice" against the Debtor.[9]

5      In fact, the court used both terms--"probation officers" and
6  "parole officers"--in the Decision, the former much more
7  frequently than the latter.  Further, the distinction between
8  parole officers and probation officers, in the context of the
9  Debtor's bankruptcy case and of the Decision, is a distinction
10  without a difference; in fact, it mattered not at all to the
11  court's decision whether the Debtor was on parole or on
12  probation.  That both the U.S. Trustee and the court mentioned
13  "parole officers" demonstrates not that the court was overly
14  influenced by the U.S. Trustee's brief but only that the court
15  read and considered the U.S. Trustee's pleadings, as well as the
16  Debtor's, as was its duty.[10]

17      More important, the court's methods of analyzing the
18  parties' contentions and arguments, whatever they may have been,
19  and in preparing its Decision, cannot, in and of themselves,
20  demonstrate the bias and prejudice requiring disqualification.
21  Instead, "[t]he alleged bias and prejudice to be disqualifying
22  must stem from an extrajudicial source and result in an opinion

23

24      9.  The Debtor contends that the act of "publishing" the
25  Decision was intended to cause harm to the Debtor.  However, the
    Decision was not published in any official reporter, but only on the
26  court's website, as required by the E-Government Act of 2002, Pub. L.
    No. 107-347.

27      10.  "The United States trustee may raise and may appear and be
28  heard on any issue in any case or proceeding under this title. . . ."
    11 U.S.C. § 307.

1  on the merits on some basis other than what the judge learned

2  from his participation in the case." <u>Liteky v. United States</u>,

3  <u>supra</u>, 510 U.S. at 545, n.1 (citation omitted).  "Judicial

4  rulings alone almost never constitute a valid basis for a bias or

5  partiality motion.  (Citation.)  In and of themselves . . . they

6  cannot possibly show reliance upon an extrajudicial source; and

7  can only in the rarest circumstances evidence the degree of

8  favoritism or antagonism required . . . when no extrajudicial

9  source is involved." <u>Id</u>. at 555; <u>In re Focus Media, Inc</u>. 378

10  F.3d 916, 930 (9th Cir. 2004).  The court's inadvertent use of an

11  incorrect term, "parole officers," derives solely from what the

12  court learned from its participation in the case, and not from

13  any extrajudicial source.

14      The Debtor asserts that the court copied from the U.S.

15  Trustee's brief "for [the court's] own financial self-interest in

16  currying favor with the U.S. Trustee in order to try and keep its

17  job." Affidavit, at 8:3-5.  This contention is based solely on

18  speculation.  "The standard for recusal is whether a reasonable

19  person, with knowledge and understanding of all the relevant

20  facts, would conclude that the judge's impartiality might

21  reasonably be questioned. [Citations]  The court asks how things

22  would appear to the well-informed, thoughtful, and objective

23  observer, not the hypersensitive, cynical, and suspicious

24  person." 12 <u>Moore's Federal Practice</u>, § 63.20[4] (Matthew Bender

25  3d ed.); see also <u>O'Connor v. State of Nevada</u>, 27 F.3d 357, 363-

26  64 (9th Cir. 1994).  Speculation based on the court's choice of

27  wording in its Decision simply does not suffice.

28  / / /

The Debtor also complains that the court copied the U.S. Trustee's allegedly false statement that the Debtor was under house arrest in Santa Clara County. Affidavit, at 7:3-5. In fact, this statement came from the Debtor herself. See Letter, at page 5; Declaration of Betsey Warren Lebbos in Support of Motion to Terminate Linda Schuette as Trustee and Michael Dacquisto as a Lawyer, filed November 27, 2006, at para. 28.[11]

The Debtor cites several other examples where she alleges the court copied incorrect statements from the U.S. Trustee's brief, and concludes therefrom that the court, out of bias and prejudice, failed to read the Debtor's pleadings. The court has reviewed each example, together with the portions of the record cited by the Debtor in support, and is satisfied that the court read and considered all of the Debtor's pleadings prior to issuing each of its rulings in this case, including the Decision.

## 2.   Procedural Handling of Debtor's Letter

The Debtor next complains about the court's procedural handling of the Prior Motion:

> On November 1, 2006 the Court, without my consent or permission, converted my attorney disciplinary complaint letter to be presented by a volunteer lawyer prosecuting the case before a professional attorney disciplinary committee, where I would be a witness only, into its own motion on my bankruptcy case to terminate the trustee and her lawyer and for other disciplinary relief. [Citation to record.] It did so by prejudicially construing my letter as a motion to terminate them and to impose discipline.

Affidavit, at 8:14-19.

---

11.   The Debtor raises a similar argument about the court's reference at the March 14, 2007 hearing to the Debtor being incarcerated. The court's remark was in connection with the indication of its likely ruling in favor of the Debtor on her motion to set aside a default against her. The reference to incarceration, as opposed to house arrest, was nothing more than inadvertence.

1    The Debtor argues that the court's action in treating the
2  Letter as a motion forced her and her attorney, "against their
3  will, to prosecute a motion they never filed . . . ."  The Debtor
4  concludes from this that "[t]he judge was making the debtor's
5  lawyer withdraw so she would be forced to have no lawyer."
6  Affidavit, at 8:21-9:2.[12]

7    By contrast, the Letter itself contained an explicit request
8  that the Honorable Michael McManus and the judges of this court
9  consider the Letter an official disciplinary complaint, and
10  concluded by thanking them for their "expeditious handling of
11  this matter."  Thus, the Debtor clearly intended the Letter to
12  result in some form of relief from the bankruptcy court.  The
13  court's action in setting the matter for hearing to consider
14  appropriate disciplinary action was in compliance with Rule 83-
15  184(a) of the local rules for the U.S. District Court for this
16  district, as incorporated in bankruptcy cases in this district by
17  Local Bankruptcy Rule 1001-1(c).

18    Moreover, the Debtor's present assessment of this matter
19  conflicts with the opinion she held before the court ruled on the
20  Prior Motion, when she stated, "Judge Bardwil's conversion of my
21  attorney disciplinary complaint into a motion to terminate Linda
22  Schultze [sic] as trustee and Michael Dacquisto as her lawyer and
23  to initiate disciplinary proceedings against them is an act of
24  / / /
25  / / /

26  ─────────────────
27    12.  This statement conflicts with Mr. Alvey's testimony that
   the Debtor demanded he be relieved as her counsel both before and
   after the Debtor sent the Letter to the court.  See Declaration of
28  Darryll Alvey in Support of Motion to be Relieved as Counsel, filed
   December 4, 2006.

1 | judicial courage and decency."[13]  Clearly, it is the court's

2 | ruling in the Decision the Debtor objects to now, not the fact

3 | that the court construed the Letter as a motion.   The cases,

4 | however, are uniform that a "judge's adverse rulings in the

5 | course of a judicial proceeding almost never constitute a valid

6 | basis for disqualification based on bias or partiality."  12

7 | James Wm. Moore, Moore's Fed. Practice § 63.21[4], at 63-39 (3d.

8 | ed. 2006) (citing cases); see also Liteky, 510 U.S. at 554-55.

9 |                   3.   Alleged Omissions from the Decision

10 |      The Debtor next complains that the court failed to refer in

11 | the Decision and in other rulings in the Case to each particular

12 | point raised by the Debtor.   In the Debtor's view, these alleged

13 | omissions evidence a personal animosity toward the Debtor and an

14 | inability to be impartial.   However, many of the matters

15 | allegedly omitted by the court either were actually addressed by

16 | the court or were immaterial to the particular decision of which

17 | the Debtor now complains.

18 |      For example, the Debtor asserts that the court failed to

19 | refer in the Decision to "thirty one admitted acts" of the

20 | Trustee and Trustee's Counsel in communicating with the Debtor

21 | without the consent of her attorney.  Affidavit, at 9:3-12.   In

22 | fact, the Decision responded explicitly to the Debtor's

23 | complaints that the Trustee's Counsel's communications with her

24 | probation officers were prohibited by applicable Rules of

25 | Professional Conduct, as indirect communications with the Debtor

26 |

27 | _____

28 |      13.   Debtor's Declaration in Opposition to Attorney's Motion to Withdraw Now and for Stay of Order Until After Removal of Trustee and Lawyer, filed December 14, 2006, at 1:23-26.

- 13 -

outside the presence of her counsel.  The court rejected the
contention.  Decision, at 8:20-9:2.

The remaining alleged ex parte communications by the
Trustee's Counsel consisted of serving court-filed documents on
the Debtor, as evidenced by proofs of service filed with the
court.[14]  Inasmuch as the applicable rules require the service of
motions in bankruptcy cases on the debtor as well as the debtor's
attorney, the contention that service on the Debtor constitutes
an unauthorized communication is without merit.[15]  That the court
did not mention this point in the Decision is evidence only of
its immateriality and would not suggest bias or prejudice to the
reasonable observer.

The Debtor complains that the court ignored her allegations
of perjury committed by the Trustee and her argument that on two
occasions she was not given actual notice of the continued
meeting of creditors.  On the contrary, the court made express
findings on both these issues.  See Decision, at 9:16-10:9 and
7:16-25.  The court's failure to itemize each of the alleged
instances of perjury does not mean the court failed to read the
Debtor's pleadings.  On the contrary, the undersigned is
satisfied the he read and carefully considered all the Debtor's
pleadings in this Case prior to issuing each ruling, including
the Decision.  In particular, with regard to the allegations of

---

14.  See Reply by Debtor re: 115 Misconduct Acts by Linda
Schuette and Michael Dacquisto re: Their Termination, Disciplinary
Action, and Referral of The Perjury Acts to The United States
Attorney, filed December 27, 2006, at page 7.

15.  See Fed. R. Bankr. P. 9014(b), 7004(b)(9) and (g).

perjury, the court concluded in each of the itemized instances
that the statements of the Trustee and Trustee's Counsel did not
constitute perjury or misconduct in the prosecution of the Case.
The court's failure to list and discuss each alleged instance
would not suggest to the reasonable observer any basis to
question the court's impartiality.

The Debtor refers at length to the Debtor's Medical Report
Indicating Impossibility of Performance, filed February 15, 2007,
and asserts that the court ignored this document and others filed
by the Debtor detailing her inability to attend a continued
meeting of creditors in Redding, California. Request to Void
Decisions, at 1:25-2:7. There is no evidence other than the
Debtor's dissatisfaction with the court's rulings in the Case to
support the conclusion that these documents were not read and
considered by the court.[16]

Finally, the Debtor raises the possibility that the court
caused her misunderstanding as to certain hearings on March 14,
2007, at which she did not appear. Request to Void Decisions, at
2:8-16. The court notes that the Debtor might have sought to
confirm with Court Call the status of those hearings, as she did
with certain hearings on February 28, 2007. The court would add

16. The court notes that the Debtor has failed to respond to
the Trustee's Counsel's inquiries on October 9, 2006 and February 21,
2007, as to whether the Debtor might be able to travel to the federal
courthouse in San Jose so the meeting could be conducted there. See
Exhibits in Support of Trustee's Opposition to Debtor's Motion to
Disqualify Trustee, to Disqualify Counsel for the Trustee and to
Impose Disciplinary Sanctions, filed December 18, 2006, at page 37 of
47; Exhibits to Ex Parte Request to Void Decisions Due to Pending
Disqualification and Supplement to It, filed March 21, 2007, at page
47 of 56. The Debtor admits she is able to leave her residence in
San Jose for two to four hours per day. Second Supplemental
Declaration, at ¶ 34.

1  in passing that the Debtor's filing of ex parte requests without

2  setting them for hearing and her failure otherwise to follow the

3  court's local rule with respect to its motion calendar and

4  procedures (Local Bankruptcy Rule 9014-1) causes confusion when

5  reviewing the court docket.

6              4.  <u>Alleged Fabrication of Arguments</u>

7      The Debtor asserts that the court fabricated the argument

8  (only to refute it) that the Debtor's probation officers were her

9  agents, and thus, that communications with them might constitute

10  indirect communications with the Debtor outside the presence of

11  her counsel.  The Debtor did in fact argue that the Trustee's

12  Counsel's communications with her probation officers were

13  attempts to communicate with her indirectly rather than through

14  her attorney.  See Affidavit, at 3:13-20; 4:4-9.  That the court

15  phrased the argument in terms of agency, rather than indirect

16  communication, had no bearing on the Decision, and does not

17  demonstrate personal bias or prejudice against the Debtor, as she

18  alleges.

19      The Debtor also complains that the court wrongly construed

20  as consent her then counsel's failure to object when informed

21  that the Trustee's Counsel intended to contact the Debtor's

22  probation officers.  The court finds nothing in the applicable

23  rule, Rule 2-100(A) of the California Rules of Professional

24  Conduct, to the effect that consent cannot be shown by failure to

25  object.  The court notes also that the rule expressly does not

26  prohibit communications with a public officer.  Rule 2-100(C)(1).

27      In any event, the Debtor has failed to demonstrate that a

28  reasonable person would view the court's ruling on this issue,

- 16 -

1  right or wrong, as motivated by bias or prejudice against the
2  Debtor, by favoritism toward the U.S. Trustee, or by any other
3  factor requiring disqualification.

4         5.  <u>Grounds Raised in Supplemental Affidavits</u>

5         The Debtor purports to raise new issues in her Supplemental
6  Affidavit and Second Supplemental Affidavit, and itemizes a
7  variety of new grounds for disqualification in her Third
8  Supplemental Affidavit.  Among these is the alleged evidence of a
9  misogynist and sexist attitude on the part of the undersigned,
10 and an allegation that the undersigned is prejudiced against
11 debtors.  The undersigned does not view the evidence presented as
12 proof of any such tendency, and concludes that the reasonable
13 observer would draw no such inference.

14        The court does find significant the Debtor's assertion that
15 she did not read or sign the petition commencing this Case, for
16 if that is accurate, the court's jurisdiction may be in
17 question.[17]  The assertion is contradicted by the documents filed
18 under cover of the Trustee's Counsel's declaration filed February
19 26, 2007.  However, in the interest of an accurate determination
20 on this important issue, by order dated April 3, 2007, the court
21 seeks additional evidence.

22        The court finds that the numerous itemized instances of the
23 court's alleged failure to address issues raised by the Debtor,
24 alleged falsification of the record and of "bias with
25 discriminatory conjectures and surmises" are restatements of
26
27 _____

28    17.  See Debtor's declaration entitled No Debtor's Signature on
   Petition Evidence Relative to Venue Motion, filed March 26, 2007.

arguments already raised by the Debtor and considered by the court.

Similarly, the court finds that the alleged "evidence of preferential treatment for his appointee attorney" has been, for the most part, previously raised and considered.  The Debtor raises the new argument that because the undersigned authorized the employment of the Trustee's Counsel, the undersigned had a "personal interest in the outcome" of the Debtor's Prior Motion, and should have disqualified himself on that basis.  However, a single judge typically presides in a particular bankruptcy case, and a ruling on an application to employ counsel gives the deciding judge no personal stake of any kind in the outcome of any other proceedings in the case.

The Debtor's argument that one panel trustee may not serve as attorney for another panel trustee is similarly flawed.  In this district at any rate, such employment is not uncommon, and the court's failure previously to address this issue is certainly no evidence of favoritism toward the Trustee's Counsel, as the Debtor alleges.

The Debtor's arguments that the court prejudges the issues in the Case are unfounded and demonstrate the Debtor's dissatisfaction with the rulings she cites; they do not demonstrate the sort of pervasive bias or prejudice that would constitute grounds for disqualification.

Finally, the Debtor asserts that the court supports and approves of the crimes and frauds allegedly committed by the Trustee and Trustee's Counsel.  In this regard, the court notes that the Debtor has no hesitation about stating her opinions as

fact.  "[The court] even admits the conduct is criminal and it
approves of it."  Affidavit, at 11:15.  This statement is simply
incorrect.  The Debtor's statement is evidence of nothing more
than her dissatisfaction with the court's rulings in the Case.[18]

The court has read and considered the alleged "new evidence
of pervasive bias" presented by the Debtor in her Supplemental
and Second and Third Supplemental Affidavits, and finds that in
each instance, the Debtor's real complaint is with the court's
rulings in the Case.  Despite the sheer number of examples
itemized by the Debtor, and mindful that there is an exception to
the extrajudicial source rule in cases of bias or prejudice "so
extreme as to display clear inability to render fair judgment"
(see Liteky v. United States, supra, 510 U.S. at 551), the court
nevertheless is satisfied that its decisions have been based on a
careful review and analysis of the points raised by the Debtor,
without bias or prejudice in favor of any party or attorney.  The
court believes its rulings have been firmly grounded in the
applicable law and are appropriate in light of the facts as
presented by all the parties.

In summary, the undersigned is satisfied that he is actually
unbiased towards the attorneys and the parties in this matter,
including the Debtor.  The undersigned also cannot conclude that
the grounds advanced by the Debtor are such as would cause a
reasonable person to question the impartiality of the
undersigned.

---

18.  In a similar vein, the Debtor repeatedly accuses the
undersigned of admitting that he has never read particular pleadings
of the Debtor.  Third Supplemental Affidavit, at page 2.

### III. CONCLUSION

For the reasons stated above, the court finds that the Debtor has not met her burden under 28 U.S.C. § 455(a) of overcoming the presumption of impartiality and demonstrating that the impartiality of the undersigned might reasonably be questioned.   Neither has the Debtor demonstrated grounds for disqualification under 28 U.S.C. § 455(b).

The court will issue an order in the Case consistent with this memorandum, as well as orders in Adversary Proceeding Nos. 06-2314 and 07-2006.

Dated:   April 13, 2007            _Robert Bardwil_____
                                   ROBERT S. BARDWIL
                                   United States Bankruptcy Judge

## CERTIFICATE OF MAILING

I, Andrea Lovgren, in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

Office of the United States Trustee
501 "I" Street, 7th Floor
Sacramento, CA 95814

Linda Schuette
P.O. Box 743
Palo Cedro, CA 96073

Michael Dacquisto
1901 Court Street
Redding, CA 96001

Betsey Warren Lebbos
P.O. Box 197
New Almaden, CA 95042

DATE: April 13, 2007

Deputy Clerk