FILED

SEP 2 4 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON THE WEBSITE

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 06-22225-D-7 |
| | ) | Docket Control No. BWL-9 |
| BETSEY WARREN LEBBOS, | ) | |
| | ) | |
| | ) | DATE:  September 12, 2007 |
| Debtor. | ) | TIME:  10:00 a.m. |
| | ) | DEPT:  D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

<u>**MEMORANDUM DECISION**</u>

Betsey Warren Lebbos ("the Debtor"), who initiated the above-captioned chapter 7 bankruptcy case, seeks to disqualify the undersigned as the bankruptcy judge in this case and in <u>Schuette v. Lebbos</u>, Adv. No. 07-2006.  For the reasons set forth below, the court will deny the Debtor's request.

As a preface, the court notes that this is the Debtor's second request to disqualify the undersigned as the judge in this case.  The prior request was denied by order dated April 13, 2007, for reasons set forth in a memorandum decision of the same date ("the April 13, 2007 decision").

This pattern of seeking to disqualify judges with whom she is dissatisfied is not new to the Debtor.  She is experienced

384

1  with the legal system, having practiced as an attorney from 1975,

2  the date of her admission to the Bar of the State of California,

3  until 1991, when she was disbarred.[1]

4  ## I. INTRODUCTION

5      On June 26, 2006, the Debtor filed her voluntary chapter 7

6  petition.  On August 24, 2007, she filed a document entitled

7  "Judicial Disqualification Affidavit For Honorable Robert Bardwil

8  Due to His Interest in the Outcome, Partisanship, Bias,

9  Prejudice, And Prejudgment Against The Disabled" ("the August 24

10  Affidavit").  On September 6, 2007, the Debtor filed an affidavit

11  bearing the same title in Adv. No. 07-2006 ("the September 6

12  Affidavit").  This memorandum constitutes the court's decision on

13  both affidavits.[2]

14      As has occurred more than once in this case, the Debtor did

15  not file a motion or notice of hearing or otherwise attempt to

16  set either affidavit for hearing.[3]  The court construed the

17

18      1.  Lebbos v. State Bar of California, 53 Cal.3d 37, 49 (1991).
    In the disbarment proceeding, the California Supreme Court recited
19  the factual findings of the State Bar hearing panel, including, among
    other things, that the Debtor had "repeatedly made frivolous motions
20  to disqualify judges of the Santa Clara County Superior Court."  See
    53 Cal.3d at 43.  The Court reviewed a variety of findings by the
21  panel, and concluded that the Debtor's "rampant course of misconduct
    and deceit fully warrants disbarment."  53 Cal.3d at 45.
22
        2.  The Debtor's co-defendants in that adversary proceeding,
23  Jason Gold and Thomas Carter, have filed their own requests for
    disqualification; the court's decisions on their motions are also
24  filed herewith.

25      3.  On August 28, 2007, the Debtor filed a document entitled
    "Judicial Disqualification Affidavit Date for Hearing," in which she
26  added a hearing date and time to the caption.  She chose a hearing
    date one day later, August 29, which is not in compliance with the
27  procedures in this court for setting matters for hearing.  (Reference
    is made to Local Bankruptcy Rule 9014-1.)
28

1  August 24 Affidavit as a motion, and issued an order on August
2  29, 2007 that set the matter for hearing on September 12, 2007,
3  and set a deadline of September 5, 2007, for the filing of
4  responses.   Linda Schuette, the chapter 7 trustee in this case
5  ("Trustee"), through her counsel, Michael Dacquisto ("Trustee's
6  Counsel"), filed opposition on August 30, 2007.

7      On September 12, 2007, the court heard oral argument.   The
8  following parties appeared and presented argument:   John Read (by
9  telephone), making a special appearance for the Debtor, Michael
10 Dacquisto (by telephone), for the Trustee, and Jason Gold (by
11 telephone), a defendant in <u>Schuette v. Lebbos</u>, Adv. No. 07-2006,
12 on his own behalf.

13     No objection was made to any evidence offered.   The motion
14 having been briefed and argued by those parties wishing to be
15 heard, the court took the motion under submission.

16                          <u>II. ANALYSIS</u>

17 <u>A.   Request for Determination by Another Judge</u>

18     In the September 6 Affidavit, the Debtor asks that her
19 request to disqualify the undersigned be determined by another
20 judge.   This issue was addressed in the April 13, 2007 decision,
21 and there is no reason for a different result in this instance.
22 Therefore, the reasoning stated in the April 13, 2007 decision is
23 incorporated herein, and the request to have the matters
24 determined by a judge other than the undersigned is denied.

25 <u>B.   Legal Standards for Disqualification</u>

26     This court has jurisdiction over the motion pursuant to 28
27 U.S.C. sections 1334 and 157(b)(1).   The motion is a core
28 / / /

- 3 -

1  proceeding under 28 U.S.C. section (b)(2)(A) & (0); <u>In re Betts</u>,

2  143 B.R. 1016, 1018 (Bankr. N.D. Ill. 1992).

3      "A bankruptcy judge shall be governed by 28 U.S.C. § 455,

4  and disqualified from presiding over the proceeding or contested

5  matter in which the disqualifying circumstance arises, or, if

6  appropriate, shall be disqualified from presiding over the case."

7  Fed. R. Bankr. P. 5004(a).

8      Section 455 of Title 28 provides in part as follows:

9      (a) Any justice, judge, or magistrate of the United
       States shall disqualify himself in any proceeding in
10     which his impartiality might reasonably be questioned.

11     (b) He shall also disqualify himself in the following
       circumstances:
12

13         (1) Where he has a personal bias or prejudice
           concerning a party, or personal knowledge of
           disputed evidentiary facts concerning the
14         proceeding.

15                        * * *

16         (4) He knows that he . . . has a financial
           interest in the subject matter in controversy
17         or in a party to the proceeding, or any other
           interest that could be substantially affected
18         by the outcome of the proceeding.

19     The disqualification statute was comprehensively revised in

20  1974, to provide for disqualification not only where a judge

21  holds a personal bias or prejudice, but also to spell out a list

22  (not fully reproduced above) of various interests and

23  relationships that require the judge to disqualify himself from

24  hearing a proceeding; such interests and relationships were only

25  generally stated in the prior statutory language.  <u>Liteky v.</u>

26  <u>United States</u>, 510 U.S. 540, 546-48 (1994).  Section 455(a) was

27  added to include objective, "catch-all" grounds for

28  disqualification, in addition to the earlier "interest or

relationship" grounds and "bias or prejudice" grounds, which are now specifically stated and set forth in the various subsections making up § 455(b). Liteky, 510 U.S. at 548. Under § 455(a), "[the standard for recusal is clearly objective: 'whether a reasonable person with knowledge of all of the facts would conclude that the judge's impartiality might reasonably be questioned'." In re Georgetown Park Apts., Ltd., 143 B.R. 557, 559 (B.A.P. 9th Cir. 1992), quoting United States v. Nelson, 718 F.2d 315, 321 (9th Cir. 1983) (other citations omitted).

The Code of Conduct for United States Judges (the "Code of Conduct") mirrors the provisions of 28 U.S.C. § 455. The Code of Conduct requires that "every judicial officer must satisfy himself that he is actually unbiased towards the parties in each case and that his impartiality is not reasonably subject to question." Bernard v. Coyne (In re Bernard), 31 F.3d 842, 843 (9th Cir. 1994). Under this standard, the judge must not only be subjectively confident that he is unbiased; it is also objectively necessary that "an informed, rational, objective observer would not doubt his impartiality." Id. at 844, citing United States v. Winston, 613 F.2d 221, 222 (9th Cir. 1980). However, "to say that § 455(a) requires concern for appearances is not to say that it requires concern for mirages." United States v. El-Gabrowny, 844 F. Supp. 955, 961 (S.D.N.Y. 1994). As such, recusal must be based on factors in the record and in the law. Id. at 962.

Cases applying recusal statutes apply a presumption of impartiality. E.g. In re Larson, 43 F.3d 410, 414 (8th Cir. 1994) (judge presumed impartial; parties seeking recusal bear

- 5 -

"substantial burden" of proving otherwise); <u>First Interstate Bank</u>
<u>v. Murphy, Weir & Butler</u>, 210 F.3d 983, 987 (9th Cir. 2000)
("Judicial impartiality is presumed"); <u>In re Spirtos</u>, 298 B.R.
425, 431 (Bankr. C.D. Cal. 2003) ("A judge is presumed to be
qualified to hear a matter and the burden is upon the moving
party to prove otherwise").

　　　　In addition, "[j]udges have an obligation to litigants and
their colleagues not to remove themselves needlessly . . .
because a change of umpire in mid-contest may require a great
deal of work to be redone . . . and facilitate judge-shopping."
<u>In re Betts</u>, 143 B.R. 1016, 1020 (Bankr. N.D. Ill. 1992), quoting
<u>In re National Union Fire Ins. Co.</u>, 839 F.2d 1226, 1229 (7th Cir.
1988) (omitting citation); <u>see also In re Computer Dynamics,</u>
<u>Inc.</u>, 253 B.R. 693, 698 (E.D. Va. 2000) (judge equally obligated
not to remove himself when there is no necessity and to do so
when there is), <u>aff'd</u> 10 F. App'x 141 (4th Cir. 2001).

<u>C.　The Debtor's Arguments</u>

　　　　<u>1.　Alleged Refusal to Accommodate the Debtor's Disabilities</u>

　　　　The Debtor's argument focuses on her asserted disabilities
and the court's alleged failure to accommodate them.　The Debtor
goes so far as to suggest that the court is attempting to harm
her so as to bring to an end her several pending appeals from its
decisions.　The record in this case supports a contrary
conclusion; namely, that the court has made every effort to
accommodate the Debtor's asserted disabilities while at the same
time not allowing the Debtor to use them as an excuse not to
comply with her duties as a debtor in this bankruptcy case.

/ / /

All debtors seeking relief under the Bankruptcy Code have a
duty to "appear and submit to examination under oath at the
meeting of creditors" (11 U.S.C. § 343), to "cooperate with the
trustee as necessary" to enable him or her to perform his or her
duties as trustee (11 U.S.C. § 521(a)(3)), and to "surrender to
the trustee all property of the estate and any recorded
information, including books, documents, records, and papers,
relating to property of the estate."  11 U.S.C. § 521(a)(4).

In this case, the Debtor has suggested that her duty to
appear at the meeting of creditors extends only to an initial
appearance.[4]  She has emphasized that she has already provided
over forty pages of materials in response to the Trustee's
document requests.[5]  She has repeatedly suggested that the
Trustee conduct the continued meeting of creditors by way of
written interrogatories or a telephone examination.[6]  On the
contrary, it is not up to the debtor in any bankruptcy case to
direct the manner of conducting the meeting of creditors, to
conclude that a continued meeting of creditors would be
"unnecessary and wasteful,"[7] to choose which documents to provide

---

4.   See reply to opposition, DN 202, 5:19-22; second
supplemental affidavit, DN 228, 5:20-22.  By contrast, "[t]he meeting
may be adjourned from time to time by announcement at the meeting of
the adjourned date and time without further written notice." Fed. R.
Bankr. P. 2003(e).

5.   Debtor's letter dated August 21, 2007, Exhibit B to the
declaration of Michael Dacquisto, DN 358.  ("DN" refers to the number
of the entry on the court's docket.)

6.   See, for example, the quotations from the record cited by
the Debtor in footnote 3 of the August 24 Affidavit.

7.   August 24 Affidavit, at 6:1-2.

1  to the trustee or how many pages are enough, or in any other way
2  to determine the extent of her cooperation with the trustee.[8]

3      This court has at all times sought to maintain an
4  appropriate balance between the Debtor's duties under the
5  Bankruptcy Code, on the one hand, and her asserted physical
6  disabilities, on the other, while also keeping in mind that
7  trustees and creditors have rights in bankruptcy cases as well.
8  For example, although the Trustee has sought an order under
9  Federal Rule of Bankruptcy Procedure 2005 to apprehend the Debtor
10  and bring her before the court, the court has repeatedly declined
11  this invitation, citing the Debtor's alleged health concerns.[9]

12      At a hearing on April 25, 2007, on the Trustee's motion for
13  a Rule 2005 order, the court expressed the concern that the
14  Debtor may be unable to travel for extended distances, and asked
15  the parties to "make an effort to obtain the necessary testimony
16  from Ms. Lebbos but also accommodate whatever physical limitation
17  / / /
18  / / /

19  _____

20      8.    The Debtor has never sought a protective order, preferring
   instead simply to fail to appear, and then filing voluminous
21  documents in which she accuses the Trustee, the Trustee's Counsel,
   and the court of misconduct.

22
        9.    The only admissible evidence of her medical condition
23  submitted by the Debtor thus far is her own testimony.  On February
   15, 2007, she filed a nine-page document entitled "Debtor's Medical
24  Report Indicating Impossibility of Performance," of which the first
   seven pages were the Debtor's descriptions of her medical condition.
25  The last page of the document is a letter from a physician, which is
   hearsay and not signed under oath.  On August 14, 2007, the Debtor
26  submitted another such "medical report," which included as the last
   page a letter from another physician, inadmissible for the same
27  reasons.  Nevertheless, although the court has not made a specific
   finding regarding the extent of the Debtor's health problems or that
28  the Debtor is disabled, it has at all times fashioned its orders with
   the Debtor's alleged medical difficulties in mind.

1  she may have in a reasonable fashion."[10]   The court raised the

2  possibility that the meeting could be conducted in San Jose, in

3  the area where the Debtor was then residing (this despite the

4  fact that both the Trustee and her counsel have their offices in

5  Redding).   The Debtor, appearing by telephone, expressed two

6  concerns--one, that she would need permission from her probation

7  officers, and two, that she could only stay out "a couple of

8  hours," due to her allergies and pollution in the air.

9       The court engaged in a discussion with the Debtor and the

10  Trustee's Counsel, and ultimately indicated it intended to order

11  the Debtor to appear for an examination under Federal Rule of

12  Bankruptcy Procedure 2004 at the federal courthouse in San Jose

13  on reasonable notice and in conjunction with whatever

14  probationary approval was required, limited to two and one-half

15  hour blocks, and continuing from day to day if necessary.   Such

16  an order, which took into account the Debtor's stated

17  limitations, was issued on May 10, 2007.

18       Thus, the court rejected the Trustee's request that the

19  Debtor be apprehended and brought to court, in favor of an

20  arrangement whereby the Trustee and her counsel would travel from

21  Redding to San Jose, so that the Debtor could be examined at a

22  location more convenient to her, and without requiring her to

23  travel to an area she believed would threaten her health.

24       The Debtor takes issue with the fact that the Rule 2004

25  examination in San Jose was set for May 31, 2007.   She refers to

26

27  _____

28       10.  See transcript of April 25, 2007 hearing, DN 327, beginning
    at 20:8.   (The transcript incorrectly fails to identify the court as
    the speaker at 20:17.)

- 9 -

1  prior pleadings in which she stated she would be back at her home

2  in Long Beach by May 28, and suggests the court should have had

3  that in mind when the order was signed.  "A fair and impartial

4  judge would have known the debtor was already in her home in Long

5  Beach several hundred miles away before May 31, 2007."  August 24

6  Affidavit at 12:19-21.

7      At the April 25, 2007 hearing, in which the Debtor

8  participated telephonically, the court stated, "she is currently

9  in the San Jose area at least through May."[11]  More important, May

10  24 and May 31 were specifically discussed as possible dates for

11  the Rule 2004 examination.[12]  The Debtor had the opportunity at

12  that time to inform the court and the Trustee that she would be

13  back in Long Beach by May 28; she chose to remain silent.

14      On May 25, 2007, the Debtor filed an ex parte motion to

15  quash the examination, suggesting she had not received notice of

16  the May 31 date until May 23.  She referred to several pleadings

17  in which she had mentioned May 28 as the date she would return to

18  Long Beach.  The Debtor seems to argue the court should be aware

19  of all the dates and details presented in the voluminous

20  pleadings she has filed with the court, but then excuses herself

21  from bringing the conflict in dates to the court's attention at

22  the April 25 hearing, when these specific dates were discussed.[13]

23  _____

24      11.  Transcript of April 25, 2007 hearing, DN 327, page 16.

25      12.  Id., page 33.

26      13.  Had the Debtor or Mr. Read informed the court at the April
   25 hearing that the Debtor would be in Long Beach by May 28, the
27  Trustee could have selected the May 24 date, also discussed that day.
   (Mr. Read now testifies that he knew the Debtor would be back in Long
28  Beach by May 28--see declaration filed August 28, 2007, DN 364--yet
   he too kept silent on April 25.)

1   At a hearing on June 6, 2007, attorney John Read, making a
2   special appearance for the Debtor, stated at the outset that "she
3   has moved back to Los Angeles where she says she is feeling much
4   better."[14]  But when the discussion turned to the possibility of
5   the Debtor being examined in Los Angeles, Mr. Read said "she has
6   to see a heart specialist now.  She'll need at least 60 days."[15]
7   Yet despite this suggestion that the Debtor would need at least
8   60 days, there is no indication in the record, some 90 days
9   later, that the Debtor has made herself available for a continued
10  meeting of creditors or Rule 2004 examination.

11   Despite the indication on June 6 that further delays were
12  likely, the court continued to seek to accommodate the Debtor.
13  The court advised Mr. Read to inform the Debtor that, while the
14  court was not going to have the marshals bring her to a meeting
15  of creditors or Rule 2004 exam, she would need to make herself
16  available.  "And whether it is done by telephone, whether it is
17  done down in Southern California, the Court will be reasonable in
18  that regard.  But simply not showing up is not acceptable."[16]  The
19  court then continued the hearing to allow the parties to continue
20  to try to reach mutually acceptable arrangements.  The hearing
21  was continued to July 11, then to August 1, then to August 29,
22  and most recently, to September 26.

23
24  _____

25   14.  Transcript of June 6, 2007 hearing, DN 325, page 6.

26   15.  Id., 11:6-10.  (The reference to Mr. Dacquisto as the
    speaker on line 10 of page 6 of the transcript is an error; the
27  speaker was Mr. Read.)

28   16.  Id., pages 12-13.

- 11 -

1    In sum, the court rejects the Debtor's attempt to blame

2 this state of affairs on an alleged lack of respect by the court

3 for her physical disabilities, and concludes instead that the

4 Debtor has engaged in and continues to engage in dubious

5 gamesmanship in an effort to frustrate the Trustee's efforts to

6 examine the Debtor.  The court has been more than reasonable in

7 its efforts to accommodate the Debtor, with virtually no

8 concomitant cooperation on her part.

9    2.  Special Appearances on Debtor's Behalf

10   Next, the Debtor incorrectly asserts that the court has

11 "ordered the debtor's specially appearing Ventura County attorney

12 to cease appearing for the sick debtor, . . . ."  August 24

13 Affidavit at 4:19-20.  The Debtor is referring to attorney John

14 Read, who has made "special appearances" on her behalf on at

15 least eight different occasions in this case.[17]  The portions of

16 the record cited by the Debtor make clear that the court has

17 welcomed Mr. Read to substitute in to the case as the Debtor's

18 counsel, but has informed him that he will not be permitted to

19 indefinitely make special appearances on her behalf.  This matter

20 was discussed at hearings on May 23, May 24, June 6, and July

21 11,;[18] the court repeatedly cautioned Mr. Read that he would not

22 be permitted to continue the pattern of special appearances,

23

24    17.  On April 5, April 25, June 6, July 11, August 1, and August
   29, 2007.  See court's minutes at DNs 237, 268, 323, 331, 343, 377.
25 And on May 23 and 24, 2007.  See transcripts at DNs 111 and 112 in
   Adv. No. 06-2314.

26
   18.  Transcripts of these hearings are at DNs 111 and 112 in
27 Adv. No. 06-2314, and DN 325 in the parent case.  The transcript of
   the July 11 hearing is the Debtor's Exhibit G filed in support of the
28 September 6 Affidavit (DN 194 in Adv. No. 07-2006).

because it was becoming counter-productive to the administration of the case.

This court's rules provide for a party-litigant to either represent himself or herself or to be represented by counsel. Rule 83-183 of the Local Rules for the U.S. District Court for this district, incorporated in this case by Local Bankruptcy Rule 1001-1, provides that an individual representing himself or herself without an attorney must appear personally or by courtesy appearance by an attorney admitted to the Bar of the Court. Rule 83-182 provides that, with exceptions not applicable here, "no attorney may participate in any action unless the attorney has appeared as an attorney of record."

Mr. Read has specially appeared but cannot commit on behalf of the Debtor. This leaves the court, the Trustee, and creditors in a quandary. Do the parties contact Mr. Read or the Debtor? Does Mr. Read feel the need to be thoroughly prepared for his "special appearances," and does he have authority to make decisions and commitments on behalf of the Debtor?

The problem was illustrated at the June 6, 2007 hearing, at which Mr. Read appeared specially, for the third time. The Debtor was not present and did not appear telephonically. The court began by asking Mr. Read whether the Debtor had any opposition to the Trustee's motion to extend the time to object to the discharge.[19] Mr. Read replied that it "could be something that has slipped by her," that he did not have any opposition in front of him and hadn't sent any out. Later in that same

_____

19.   Transcript of June 6, 2007 hearing, DN 325.

hearing, Mr. Read referred to the ex parte motion the Debtor had filed to vacate the Rule 2004 order, but was unsure whether he had even seen it.

Mr. Read went on to state he had discussed with the Trustee's Counsel the possibility of the examination taking place in an area where the Debtor feels less at risk, in terms of her health.  The court continued the hearing to "see if Mr. Read and Mr. Dacquisto can work something out."[20]

Yet at the next hearing, on July 11, the Trustee's Counsel informed the court that he had heard nothing from either Mr. Read or the Debtor until he heard from Mr. Read that morning.  In response to the court's inquiry as to why he had not contacted the Trustee's Counsel, Mr. Read replied that he had communicated with the Debtor and "she apparently was going to contact him." Mr. Read added that he would like the opportunity to contact the Debtor that day and have her get in touch with the Trustee's Counsel that day.  When pressed to commit to a time, Mr. Read agreed he would try to reach the Trustee's Counsel later that day.  The court agreed to give Mr. Read "one last chance" to contact the Trustee's Counsel, adding, "I want the parties to talk about how Ms. Lebbos can be examined.  And I'm hopeful that with Mr. Read as an intermediary, that it will facilitate -- it will facilitate the process."

Mr. Read did not call the Trustee's Counsel that day. Instead, he wrote to the Trustee's Counsel, stating, "I am not her attorney of record.  She represents herself.  I have made a

---

20.  Transcript of June 6, 2007 hearing, DN 325.

special appearance only on the court proceeding.  I do not have
the authority to communicate with you as her attorney."[21] [22] He
asked that the Trustee's Counsel contact the Debtor about
possible dates for the examination, but added, "I would put it
over until 8-17-07 because of vacation schedule."  In other
words, the Trustee's Counsel is  required to communicate with the
Debtor, but also to take into account Mr. Read's schedule.[23]

Mr. Read's eight appearances for the Debtor in this matter,
his out-of-court communications with the Trustee's Counsel, and
his declaration is support of the Debtor's position on the
Trustee's motion to hold her in contempt[24] go well beyond the
"courtesy appearance" for a pro se litigant allowed by Local
District Court Rule 83-183.  This pattern of continuing
representation places Mr. Read squarely within the "participation
in an action" that is proscribed by Rule 83-182 except by an

_____

21.  This communication was made on July 11, after Mr. Read's
sixth special appearance on behalf of the Debtor.

22.  The Debtor accuses the court of partisanship because the
court "asked the opposing lawyer whether the debtor's [specially
appearing] lawyer's participation is helpful or not."  September 6
Affidavit at 4:1-4.  The inquiry immediately followed an expression
of the court's concern about Mr. Read's "inability to act as a point
person for communications with other counsel."  Transcript of July 11
hearing, DN 194 in Adv. No. 07-2006, Exhibit G, at 4:21-5:4.  In
light of what has transpired, the court's concern was well-founded
and its inquiry was appropriate.

23.  See also Exhibit B to second supplemental declaration of
Michael P. Dacquisto, filed August 27, 2007, DN 358.  "Attorney John
Read is recovering from a hernia operation so I can not present any
dates other than tentative dates on Fridays in October for him to be
able to come down on a Friday when he is not so busy for a one hour
interview with me here in Long Beach if you want one.  I tentatively
provide the following dates: October 12, 19, and 26, 2007."

24.  Declaration filed August 28, 2007.

attorney of record.  The reality is that, at times, Mr. Read
purports to represent the Debtor, and at other times is only
"appearing specially," without any client authority, depending on
which suits the Debtor's agenda.  This type of half in-half out
representation has not helped but rather hampered the orderly
administration of this case.

In sum, the court's refusal to allow this continuing pattern
of special appearances is not due to any bias against the
disabled or lack of fairness or impartiality.  It is simply a
reflection of the court's legitimate interest in controlling the
proceedings before it.

The same is true of the Debtor's next argument in support of
her theory of bias; namely, that the court in one instance warned
her it would have her telephonic appearance disconnected.  The
Debtor's quotation from the record, in footnote 2 of the August
24 Affidavit, is incomplete.  The transcript reveals that the
Debtor repeatedly interrupted the proceedings, objected to
"allowing the interference of my criminal process by an attorney
who is lying and defrauding everybody," made references to
criminal and unethical conduct, and brought up her attempt to
have the Trustee's Counsel disbarred, all in an effort to
persuade the court that she, and not the Trustee's Counsel,
should be the one to ask her probation officers whether she could
attend the meeting of creditors in San Jose.[25]  The court is
persuaded that its warning was a reasonable and prudent attempt
to control the courtroom proceedings.

25.  Transcript of April 25, 2007 hearing, DN 327, pages 21-29.

1  ### 3.  Procedural Handling of the Case

2  The Debtor next complains that the court has made its own

3  motions in the case, "opposed the debtor acting as the real

4  attorney for the trustee and as the debtor's personal opponent,"

5  and then ruled against the Debtor.  August 24 Affidavit at 8.

6  The court disagrees.

7  The Debtor begins with what she now characterizes as her

8  "private letter sent to all the judges" (August 24 Affidavit,

9  page 8), and complains that, in setting it for hearing, the

10  undersigned "made it into his own motion," "ordered the debtor's

11  lawyer to prosecute it without his permission," and then "denied

12  his own motion."  August 24 Affidavit, page 8.

13  The crux of this problem is the Debtor's repeated conduct in

14  filing requests for relief of one sort or another, without

15  following the rules of procedure.  The Debtor has on occasion

16  filed motions evidencing her awareness of Local Bankruptcy Rule

17  9014-1, by selecting an appropriate hearing date and advising

18  potential responding parties of the obligation to file written

19  opposition not less than 14 calendar days prior to the hearing

20  date.[26]  But despite this knowledge, the Debtor on other occasions

21  has chosen to file "ex parte applications," without setting them

22  for hearing in accordance with LBR 9014-1.[27]  This habit puts the

23

24

---

25  26.  See motions filed January 29, 2007 (DN 131), January 31, 2007 (DN 137), February 1, 2007 (DN 142).

26

27  27.  See applications filed January 29, 2007 (DN 132), February 15, 2007 (DN 156), March 21, 2007 (DN 211).  (The Debtor also chooses on occasion to file completely random documents, as on April 2, 2007

28  (DN 230), April 19, 2007 (DN 254), and July 31, 2007 (DN 336).)

court in the position of having to determine the appropriate procedural handling of these applications.

In the case of the Debtor's letter filed November 1, 2006, the court has already addressed the procedural handling of the letter in the April 13, 2007 decision; that response will not be repeated here.

The Debtor next complains that the court "gratuitously, as a partisan, attorney, and advocate for the trustee party, and beyond the scope of the motion filed," ordered the Debtor to appear at "any further continued Meeting of Creditors." The order, filed January 19, 2007, was issued on the motion of the Trustee to compel the Debtor's attendance at a continued meeting of creditors. The Debtor and her then attorney were properly noticed and given an opportunity to file written opposition (see DN 50), and both appeared at the hearing (see DN 107).

Although the language requiring the Debtor to attend further continued meetings of creditors was beyond the scope of the relief requested in the Trustee's motion, it was well within the scope of the relief the court may order pursuant to Fed. R. Bankr. P. 2005(a).

> If, after hearing, the court finds the allegations to be true, the court shall thereupon cause the debtor to be examined forthwith. If necessary, the court shall fix conditions for further examination and for the debtor's obedience to all orders made in reference thereto.

The language of the order reflects the court's legitimate attempt to ensure the Debtor's adherence to her duties under the Bankruptcy Code. The court notes that in the almost eight months since the order was issued, the Debtor still has not appeared at

even the first continued meeting of creditors.  It is clear that
the court's decision to require attendance at any further
continued meeting was well founded.

The Debtor next complains about the court's handling of an
issue she raised in the spring of this year, challenging the
validity of the petition itself on the ground that she had not
signed it.  On March 26, 2007, nine months after the case was
commenced, the Debtor filed a document entitled "No Debtor's
Signature On Petition Evidence Relative to Venue Motion," in
which she accused her former attorney of either falsifying her
signature or submitting the petition with the notation "/s/
Betsey Warren Lebbos," knowing she had not signed it.[28]  The
Debtor raised this issue in connection with her motion to change
venue, then set for hearing two days later, with no opportunity
for other parties to respond.  These accusations called into
question whether the case was properly commenced in the first
instance.

In response to these accusations, and in order to give the
Debtor's former attorney an opportunity to respond, the court on
April 3, 2007 issued an order directing the attorney to file a
declaration indicating "whether the Debtor reviewed and signed
the Chapter 7 Documents before they were filed."[29]  On April 12,
2007, the attorney filed a declaration testifying that the Debtor

---

28.  This was not accompanied by a motion or request for relief.

29.  The court did not, as the Debtor contends, order the
attorney to file a declaration opposing the Debtor or "order the
former attorney to file a declaration stating the debtor signed the
unsigned petition the attorney filed with the Court."  (See August 24
Affidavit at page 10.)

"personally appeared in my office and reviewed the Chapter 7 documents and signed them in my presence."[30]

The Debtor apparently would have preferred that the court simply accept her word that she did not sign the petition, and because the court did not, the Debtor now construes the April 3, 2007 order as the court acting as the attorney for the Trustee and as the Debtor's "personal party opponent."  On the contrary, nothing prohibits the court from acting sua sponte to ensure that a case has been properly filed.

As a final example of the court "filing its own motions" as the Debtor's opponent, the Debtor cites the court's alleged "substitution" of its own Rule 2004 motion for the Trustee's Rule 2005 motion, and accuses the court, again, of acting as attorney for the Trustee.  The Debtor states that Rule 2004 "does not permit a judge to file such a motion, but only a party is permitted to do so."  August 24 Affidavit at 12:23-25.  She also complains that Rule 2004 was raised "without any notice or opportunity given to the debtor to oppose it."  August 24 Affidavit at 11:8-9.

By contrast, "[t]he court may for cause shown and on terms as it may impose order the debtor to be examined under this rule at any time or place it designates, whether within or without the district wherein the case is pending."  Fed. R. Bankr. P.

---

30.  The Debtor contends that the chapter 7 documents referred to in the declaration referred to the office questionnaire the Debtor filled out and signed, and thus, that the attorney "never said the debtor signed the petition."  On the contrary, the April 3, 2007 order had specifically defined the chapter 7 documents as the petition, schedules, statement of affairs, statement of intention, and Form B22A.

2004(d).  A Rule 2004 motion is "filed and usually granted *ex parte*; thereafter, notice of the examination would be given to the affected parties (*i.e.*, a hearing would not be held unless a motion to quash or some other form of protective order is filed in response to a Rule 2004 motion.)"  9 COLLIER ON BANKRUPTCY ¶ 2004.01[2] (Alan N. Resnick & Henry J. Sommer, ed., 15th ed. rev., 2005) ("COLLIER").

The Debtor points out that she did file a motion to quash, six days before the scheduled May 31 examination date (DN 317). However, in her typical fashion, she did not attempt to set it for hearing and did not seek an order shortening time for notice of a hearing, as required by LBR 9014-1.  And again, had the Debtor made mention of her departure date at the April 25 hearing, her need for a motion to quash would have been avoided entirely.  The court finds the motion to quash to be one more example of the Debtor's ongoing efforts to delay these proceedings.

With regard to the Rule 2004 order, the Debtor also contends that "the local rules required a subpoena and none issued.  They also required thirty days notice and the judge gave the debtor less than half of the required notice."  August 24 Affidavit at 12:25-27.  In her motion to quash (DN 317), the Debtor cites EDC Forms 6-970A and 6-970B, which refer to Federal Rule of Bankruptcy Procedure 2004(c), which in turn invokes Rule 9016 and Federal Rule of Civil Procedure 45 to provide that attendance for examination and production of documentary evidence may be compelled by subpoena.  Form EDC 6-970A requires 30 days' notice

/ / /

of the examination, and EDC 6-970B requires 30 days' notice if documents are sought.

The Debtor misunderstands the import of these local forms. Form 6-970A is among those forms considered by the court to be of a "ministerial, nondiscretionary, nonjudicial, and/or administrative nature," such that they may be issued by the clerk and his designated deputies.  Special Order 06-01.  A party may wish to use this form where he or she is willing to wait 30 days after service.  Where the party needs to take the examination sooner, he or she might use Form EDC 6-970B, which is for signature by a judge.  This form purports to require 30 days' notice only if documents are sought.  Neither form requires a subpoena; rather, a subpoena is but a method for compelling attendance of an individual who has failed to appear in response to a Rule 2004 order.[31]

Further, although Form 6-970B purports to require 30 days' notice if documents are sought, the form does not supersede the court's authority under Rule 2004(d) to order an examination "at any time or place it designates."  The court notes that the documents required by its May 10, 2007 order were those identified in the Trustee's July 5, 2006 letter to the Debtor's then attorney, that are in the Debtor's possession, custody, or control.  Thus, by the time of the Rule 2004 order, the Debtor had had ten months' notice that the Trustee was seeking these

---

31.  "When Rule 2004(d) is invoked to summon the debtor, there would be no need to involve Federal Rule of Civil Procedure 45 and Rule 9016, for no subpoena would be necessary.  All that is necessary is a court order."  9 COLLIER ¶ 2004.03[1].

documents.[32]  The court struck from its order the broader language sought by the Trustee.

What the Debtor fails to appreciate is that the court's Rule 2004 order was less onerous than the Trustee's requested Rule 2005 order.  The former merely required her to appear, be examined, and produce documents, at a location convenient to the Debtor, and took into consideration her alleged medical condition; the latter would have instructed the marshal's office to bring the debtor before the court, in custody if necessary.

In short, the court concludes that the Debtor's present arguments regarding the Rule 2004 order are further examples of her delaying tactics.  Nothing in the order or the hearings leading to it evidences any p referential treatment of the Trustee or any prejudice against the Debtor.

4.  Allegation that Judge is Acting as Opponent's Counsel

In the remainder of the August 24 Affidavit, the Debtor accuses the undersigned of stepping into the role of her opponent in each of the adversary proceedings in this case, Alonso v. Lebbos, Adv. No. 06-2314, and Schuette v. Lebbos, Adv. No. 07-2006.

First, the Debtor presents a rambling recitation and personal interpretation of remarks made in a series of hearings in Alonso v. Lebbos.[33]  The Debtor's intention, apparently, is to show that the court has, during the course of these hearings,

---

32.  Further, the Debtor's duty to provide documents to the Trustee derives not from Rule 2004 but from the unequivocal language of 11 U.S.C. § 521(a)(4).

33.  August 24 Affidavit, pages 13-20.

- 23 -

suggested strategies to the plaintiff's counsel, allowed the
plaintiff's counsel improper procedural advantages, and invited
her to manufacture evidence, "so [the court] can have [the
Debtor's] daughter's Los Angeles property taken without a
trial."[34]  This conclusion is simply inaccurate.  The court has
not prejudged any of the factual issues in the adversary
proceeding or this case, and has no intention with regard to the
property of the Debtor's daughter.

   As for the particulars, the Debtor mischaracterizes the
court's remarks at the hearings.  For example, on August 1, 2007,
the court addressed an argument raised in the plaintiff's
opposition to the Debtor's motion for summary judgment; namely,
that the Debtor had failed to attend a properly noticed
deposition.  On August 1, the court continued the hearing to have
the plaintiff supplement the record to include the notice of
deposition previously referenced but not attached.  The court
added that it would not favorably consider a summary judgment
motion where a party has not been cooperative in discovery.[35]  The
Debtor now characterizes these remarks as follows:  "He [the
undersigned] tells the plaintiff to create the evidence and he

/ / /

/ / /

/ / /

/ / /

---

34.  August 24 Affidavit, pages 18-19.

35.  Transcript of August 1, 2007 hearing, Exhibit D of exhibits
submitted by the Debtor in support of the August 24 Affidavit.  (The
transcript that appears as Exhibit D mistakenly bears the heading,
"Wednesday, October 4, 2006, 10:00 A.M. Sacramento, California.")

1  will give them plenty of time to do so and will use this evidence

2  to deny the motion for summary judgment."[36] [37]

3       The pattern of mischaracterization continues in the Debtor's

4  description of hearings involving the Trustee's Counsel.[38]  First,

5  the Debtor quotes the court at the outset of a hearing on August

6  1, 2007:  "I'm assuming, Mr. Dacquisto, there's been no progress

7  having Ms. Lebbos attend the meeting of creditors."  Based on

8  that remark, the Debtor suggests that the court has engaged in ex

9  parte communications with the Trustee's Counsel.  On the

10  contrary, the court was aware of counsel's declaration filed July

11  30, 2007 (DN 333), addressing the issue, and the Trustee's report

12  of the most recent meeting of creditors (DN 332), noting the

13  Debtor's failure to appear.

14       The Debtor then complains that the undersigned "assume[d]

15  his role as the real attorney for the trustee" by discussing

16  denial of discharge and/or judgment against a non-cooperative

17  party as possible remedies for noncompliance with appropriate

18  discovery requests.[39]  In fact, the Trustee's Counsel had just

19  raised this possibility when he referred to a motion he had filed

20

---

21       36.  August 24 Affidavit at 17:9-19.

22       37.  The Debtor also complains that the court "conducted a
    conference solely with the plaintiff's attorney on June 21, 2007 when
23  Mr. Read understood this date was also continued to August 1, 2007
    and he did not appear."  August 24 Affidavit, 16:15-17.  By contrast,
24  at the May 24 hearing, the court stated three times that it was
    continuing the status conference to June 21, and Mr. Read stated he
25  would be available that day.  Transcript of May 24, 2007 hearing,
    Debtor's Exhibit B, page 11 (DN 355).
26

27       38.  August 24 Affidavit at 20-22.

28       39.  August 24 Affidavit at 21, referring to transcript of
    August 1, 2007 hearing, DN 354.

- 25 -

the day before, July 31, seeking contempt sanctions against the Debtor in the form of an order striking her answer to the complaint in <u>Schuette v. Lebbos</u> and entering her default in that action.  The possibility of denial of discharge had come up as early as June 6, 2007, on the Trustee's motion to extend the deadline to object to discharge.

As a result of the Debtor's actions in this case, which clearly appear to be directed at frustrating the Trustee's efforts to examine her, and her alleged failure to comply with discovery in the <u>Alonso</u> adversary proceeding, <u>coupled with</u> the Debtor's alleged state of ill health, the court was looking for reasonable alternatives to compel the Debtor to comply with court orders.  Accordingly, the court suggested if the Debtor's gamesmanship continues, a proper remedy under the circumstances may be objecting to discharge in the parent case, or request for default in the adversary proceedings.  Such a remedy is a legitimate sanction for repeated discovery violations or non-compliance with court orders, and the court's discussion in no way constituted giving legal advice to the Debtor's opponents, as the Debtor suggests.

Finally, the Debtor refers to an exchange on July 11 involving Jason Gold, one of her co-defendants in Adv. No. 07-2006.  The Debtor takes the court's comment that "the geographics do not impress me" for the proposition that the court "announced in advance that he would deny" her co-defendants' motion for change of venue, and he will "defy the law concerning venue."[40]

---

40.   September 6 Affidavit, at 35:10-21.

The hearing in question was on the motion of Raymond Aver, then counsel for the co-defendants, Jason Gold and Thomas Carter, to withdraw as their counsel.  Mr. Gold was asked why he had not located new counsel (it had then been over two months since Mr. Aver filed his motion to withdraw).  He responded that he "[doesn't] have substantial time to go looking for an attorney at this point," that he didn't believe Mr. Aver had good cause to withdraw, so he had not really looked for a new attorney, and finally, that he is in Southern California, and it is hard to find an attorney admitted to practice in the Eastern District.[41] It was in response to this last remark that the court commented that "the geographics do not impress me."

The Debtor's contention that this statement demonstrates bias or prejudgment on the part of the court is bunkum.

In short, the focus of the Debtor's behavior in this case and the adversary proceedings has been to frustrate the proper administration of her case and to refuse to be examined, whether at a continued meeting of creditors, a Rule 2004 examination, or a deposition.[42]  It is the court's recognition of this behavior, which has persisted even in the face of the court's ongoing attempts to accommodate her alleged physical limitations, that the Debtor objects to.  The Debtor's specious interpretation-- that the court is improperly assisting her opponent's counsel--is

---

41.  Transcript of July 11 hearing, DN 194 in Adv. No. 07-2006, Exhibit G, at 12, 13, 14.

42.  The Debtor's remarks in the September 6 Affidavit (at 34:26-35:9) concerning the merits of the adversary proceeding also suggest that the Debtor is using the request for disqualification to avoid defending that action.

an attempt to divert attention from her own refusal to cooperate
with her opponents' legitimate discovery efforts.

5.  Pendency of the Appeals

The Debtor argues that the court has a disqualifying
personal interest in the outcome of her pending appeals in this
case, in the form of a "personal desire to end these four appeals
by causing the disabled and seriously ill debtor's death or
serious physical harm or just ending the case by entering her
default."[43]  The court has addressed above all the arguments
tendered by the Debtor in support of this conclusion.  Moreover,
the cases are uniform that a "judge's adverse rulings in the
course of a judicial proceeding almost never constitute a valid
basis for disqualification based on bias or partiality."  12
James Wm. Moore, MOORE'S FED. PRACTICE § 63.21[4], at 63-39 (3d. ed.
2006) (citing cases); see also Liteky, 510 U.S. at 554-55.  That
those rulings happen to be on appeal provides no greater basis.

6.  Entry and Setting Aside of Defaults

In the September 6 Affidavit, the Debtor raises the issue of
a default entered against her co-defendant, Jason Gold, in Adv.
No. 07-2006, and subsequently set aside by the court.  The issue
is addressed in the Memorandum Decision on the motion of Jason
Gold, Docket Control No. JG-3 in the adversary proceeding, issued
herewith; the court's response is incorporated herein.

### III. CONCLUSION

It has now been more than a year since the Debtor appeared
at the initial session of the meeting of creditors in this case.

---

43.  August 24 Affidavit at 3:14-16.

1 She has failed and refused to be further examined since then,

2 either at a continued meeting of creditors, Rule 2004 exam, or

3 deposition.  It is clear to the court that the Debtor simply

4 intends to take all possible steps to delay these proceedings.

5 This court has a duty to control the proceedings before it,

6 to accord fair and equitable treatment to all the parties, and to

7 remedy situations brought to its attention in which parties are

8 not fulfilling their own duties under the Bankruptcy Code.  The

9 court remains persuaded, as it was on the Debtor's first request

10 for disqualification, that it is unbiased and impartial.  The

11 court also cannot conclude that the grounds advanced by the

12 Debtor are such as would cause a reasonable person to question

13 the court's impartiality.

14 For the reasons stated above, the court finds that the

15 Debtor has not met her burden under 28 U.S.C. § 455(a) of

16 overcoming the presumption of impartiality and demonstrating that

17 the impartiality of the undersigned might reasonably be

18 questioned.  Neither has the Debtor demonstrated grounds for

19 disqualification under 28 U.S.C. § 455(b).

20 The court will issue an order consistent with this

21 memorandum.

22 Dated: September 24, 2007          _Robert Bardwil_____

23                                    ROBERT S. BARDWIL
                                      United States Bankruptcy Judge

24

25

26

27

28

- 29 -

# CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a true copy of the attached document was mailed today to the following entities listed at the address(es) shown below:

Office of the United States Trustee
501 "I" Street, 7th Floor
Sacramento, CA 95814

Linda Schuette
P.O. Box 743
Palo Cedro, CA 96073

Michael Dacquisto
1901 Court Street
Redding, CA 96001

Betsey Warren Lebbos
P.O. Box 41306
Long Beach, CA 90853-1306

DATE: September 24, 2007 _____

Deputy Clerk